25664 and 251541. We will start off with that. What I would ask everyone to do when it is your turn to come to the podium, please make sure that you adjust the podium up and down and point the microphones as directly as you can towards yourself. Don't worry, there's no rush if you need a second to get settled at the podium. We want to make sure that we have a good discussion. We want to make sure to be magnificent arguments by all parties today. So why don't we start with the United States v. Griffin. And let's see, we have Attorney Suazo starting off for the appellants. Is that right? Yes, Your Honor. Good morning. Mark Suazo for the appellant. And you have five minutes. It's not necessarily the custom to take rebuttal time when you only have five minutes, but it is your option if you'd like to reserve some. You tell me. No, Your Honor. All the better. Okay. You may proceed whenever ready. Good morning, Your Honors, and may it please the Court. Your Honors, this case turns on a single disputed factor under Section 3143B, whether the appeal raises a substantial question. Neither the government nor the district court disputes delay or danger. The only question here is whether Mr. Griffin presents a close, fairly debatable question that is integral to the conviction, and we propose that he does. Among others, the substantial questions here are whether Mr. McCarthy's multiple threats to withdraw as counsel for Mr. Griffin chose to go to trial, coupled with the threats of a legally dubious charge, rendered his plea involuntary. And two, whether Mr. McCarthy's admitted failures to research the legal viability of the 1028A charge, the failure to apprise his client of multiple legal defenses, and repeatedly signaling to the district court and the government his intent to never try the case gave rise to ineffective assistance of counsel. The trial judge held a day-long hearing and then made findings, including credibility findings? Yes, Your Honor. There was a hearing held, and that is one of the other substantial questions that we... Was there clear error in the district court's findings? We propose that there are, Your Honor. The clear error... The district court credited Mr. McCarthy's testimony, despite the fact that documentary evidence contradicted multiple areas of his testimony, along with his own testimony given at that same hearing. You want us to overturn the district court's credibility findings? When it rests on clear errors... Findings of clear error, yes, Your Honor, because the finding of voluntariness rested on the clearly erroneous findings of fact. There was documentary evidence that we submitted in the form of text messages, third-party affidavit, and letters that contradicted various areas of what Mr. McCarthy had testified to, along with testimony during that same hearing where he was contradicting himself. For example, just as one example, the court directly asked him whether he ever told Mr. McCarthy... Or whether Mr. McCarthy told Mr. Griffin whether he would quit as his counsel if he decided to not go forward with the plea. And he did... He said that he did not. And, quote, in that same hearing, he testified, If you're crazy enough to go to trial, I would not do it. You'd have to get a new attorney, end quote. That is in the December 5, 2024 transcript, page 177, lines 13 through 16. I guess I'm having trouble with the premise that somehow lawyers incompetent were ineffective for saying that to a client. I mean, I would hope that you would say that to a client if they were nuts and you said, You're going to get creamed at trial. And I'm telling you, it's a suicide mission. Don't do it. I mean, the best lawyers speak in unusually frank terms to their clients, don't they? Yes, Your Honor. The distinction here is the fact that Mr. McCarthy set forth that he never had the intention to take this case to trial. Coupled with... Right. I mean, that's what I mean. If you see that your case is a dead loser, you kind of need to tell your client that, frankly. You don't lead them on to think, Well, maybe you got a chance. If you, in your professional assessment, think, This is, again, a suicide mission. No one in their right mind would go to trial here. Obviously, a client can do it or not, but to tell your client, Look, if you're doing this, you're doing it without me. How is that? The distinction here, Your Honor, is that... Well, let me back up. Can't a lawyer move to withdraw? Yes, Your Honor. So that is not like an illegal thing he said, if he said it. The distinction here, Your Honor, is that it's coupled with the fact that Mr. McCarthy also testified that he never researched the legal viability of one of the most coercive charges, or frightening charges, because it had the mandatory two-year minimum. That's what I get, but I don't get the whole, I'm going to withdraw or I'm not going to try. I don't get how that's even conceptually grounded by a lawyer. He framed it as... Our position is that Mr. McCarthy framed it to Mr. Griffin as he does not have the ability to go to trial, coupled with the threat of, If you go to trial, you're definitely going to go to jail. The co-defendant, the person who was bribed, also pleaded guilty. Is that right? Yes, Your Honor, to the conspiracy charge, the conspiracy to commit bribery, the 1028 charge. Did Mr. Griffin have a viable defense in this case? Our position is that he did. In 1028, with regard to the 1028... There were two counts to which he pleaded guilty. One was bribery, one was bid rigging. On the bid rigging, he admitted that he, well, first of all, on the bribery, he admitted that he bribed Dyckman, right, during the allocution? During the allocution, Your Honor, he actually denied that there was anything illegal to what he did, which is... During the allocution, he denied that he did anything illegal? Yes, Your Honor. The magistrate judge... And the magistrate judge took the plea, accepted the plea? After a second recess, the defense attorney came back, Mr. McCarthy. Did he admit that he submitted sham bids? After being asked the questions by his own defense attorney, he set forth... Did he admit that he submitted sham bids? He said yes to that question, Your Honor. Okay. I think you've run over your time. We think we have your argument. Thank you very much. Why don't we hear from the government, and we have Assistant United States Attorney Felton, I understand. Is that right? Yes, Your Honor. Why don't you see if you can raise that up a little bit, or at least tilt it. It may be up all the way. I think it's up all the way, Your Honor. May it please the Court, my name is David Felton. I'm an Assistant United States Attorney in the Southern District of New York. I represent the United States on this appeal, and I also was counsel to the United States below. Your Honor, in light of the extensive factual findings held by the District Court below after a full-day evidentiary hearing with testimony from Mr. Griffin, Mr. Griffin's former counsel, and an associate who worked with Mr. Griffin's former counsel, and the District Court's extensive rulings and factual evidence, the defendant has identified no substantial question on this appeal, and the motion for bail pending appeal should be denied. With respect to the factual findings, Your Honor, the record was clear that counsel below said, I'm not the decider, I'm just the advisor. He properly advised his client about his view of the evidence. There was no coercion. The District Court made an ample record, and there's nothing clearly erroneous about those findings or those credibility determinations, unless the panel has any questions for me, Your Honor. I rest on our submission. No, thank you very much. We will take the case under advisement. Thank you very much to both counsel for coming in today and for the arguments.